UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | ) | Case No. 4:08 CV 1259 |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | (Resolving ECF #25) |
| vs. | ) | |
| | ) | |
| MICHAEL JOSEPH EASTERLING, et al., | ) | |
| | ) | |
| Defendants. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Plaintiff, Joe Hand Promotions, Inc., has moved for interlocutory summary judgment pursuant to Rule 56(d)(2) of the Federal Rules of Civil Procedure solely on the issue of liability but not with respect to calculation of damages. Under this rule the court may enter partial summary judgment with respect to liability alone leaving the resolution of the amount of damages for subsequent trial. Joe Hand Promotions, Inc.'s complaint raises claims of cable television piracy under 47 U.S.C. §553 and §605. The first count alleges wilful violation of 47 U.S.C. §605(a) by unauthorized public exhibition of Ultimate Fighting Championship # 81 on February 2, 2008 and entitlement to damages under §605(e)(3)(C)(i)(II) and (ii). The second count alleges that defendants violated §605(e)(4) by modifying equipment used in the assistance of unauthorized decryption of satellite cable programming. In the third count Joe Hand Promotions, Inc. claims defendants violated §553 by unauthorized reception, interception and exhibition of any communication service offered over a cable system.

*Standard of review:*

Under Rule 56 of the Federal Rules of Civil Procedure granting a motion for summary judgment is only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether there is a genuine issue of material fact all inferences drawn from the underlying facts contained in affidavits, pleadings, responses to discovery requests, and depositions must be viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).  A court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment.  *Anderson*, 477 U.S. at 255.  The burden is upon the movant to demonstrate the absence of a genuine issue of material fact.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979), *cert. dismissed* 444 U.S. 986 (1979).  However, the nonmoving party is obliged to produce some evidence other than mere pleadings themselves to demonstrate that there is a genuine issue for trial.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The nonmoving party must produce significant probative evidence in support of the complaint to defeat the motion for summary judgment through affidavits or admissions on file.  *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  In the final analysis, "the threshold inquiry . . . [is] whether there is a need for trial -- whether in other words, there are any genuine factual issues that

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *Moore*, 8 F.3d at 340. Once the nonmoving party has responded, the court must view the facts in the light most favorable to the nonmoving party. *Darrah v. City of Oak Park,* 255 F.3d 301, 304 n.1 (6th Cir. 2001). Summary judgment, though, is not to be equated with default judgment when a motion is unopposed. Rule 56 requires a court, even where the motion is unopposed, to determine when the moving party has established a right to relief as a matter of law and that no genuine issue of material fact exists before the court may enter summary judgment. *Donlin v. Watkins*, 814 F.2d 273, 277 (6th Cir. 1987); *Kendall v. Hoover Co.*, 751 F.2d 171, 173-74 (6th Cir. 1974).

*Joe Hand Promotions, Inc.'s Proffered Uncontested Facts:*

Joe Hand Promotions, Inc. submits that the following items are factual conclusions supported by its affidavit. Of course, this supporting affidavit is not required since the obligation to produce supporting affidavit rests upon defendants as opposing parties pursuant to Rule 56(e)(2).

> **FIRST**: The Plaintiff, JOE HAND PROMOTIONS, INC., is a Pennsylvania Corporation with its principal place of business located at 407 East Pennsylvania Avenue, Feasterville, PA 19053.
>
> **SECOND**: Defendants, MICHAEL JOSEPH EASTERLING a/k/a MICHAEL J. EASTERLING, Individually, and as officer, director, shareholder and/or principal of KERLING LLC d/b/a STATE STREET BAR & GRILL, and KERLING LLC d/b/a STATE STREET BAR & GRILL, is a commercial establishment with a principal place of business at STATE STREET BAR & GRILL, 718 N. State Street, Girard, OH 44420. See Defendants' Answer.
>
> **THIRD**: Plaintiff held the exclusive right, by contract, to exhibit and/or distribute the February 2, 2008 UFC [Ultimate Fighting Championship] #81 event in Defendants' geographical area. Pursuant to the contract, Plaintiff entered into subsequent agreements with various entities in the State of Ohio allowing them to publicly exhibit the program to their patrons. See Plaintiff's Affidavit in Support of Summary Judgment.

4

**FOURTH**: Defendants, MICHAEL JOSEPH EASTERLING a/k/a MICHAEL J. EASTERLING, Individually, and as officer, director, shareholder and/or principal of KERLING LLC d/b/a STATE STREET BAR & GRILL, and KERLING LLC d/b/a STATE STREET BAR& GRILL, did not purchase the broadcast rights to the February 2, 2008 UFC #81 event or its associated programs. (See Plaintiff's Affidavit in Support of Summary Judgment.)

**FIFTH**: As part of its normal business operations, Plaintiff engages in anti-piracy activities designed at protecting the legitimate purchasers of the event. Plaintiff utilizes Agencies which hire auditors to visit non-subscribing establishments during the broadcast of the entire bout to determine whether any such establishments are illegally exhibiting the broadcast. See Plaintiff's Affidavit.

**SIXTH**: On February 2, 2008, Defendants, MICHAEL JOSEPH EASTERLING a/k/a MICHAEL J. EASTERLING, Individually, and as officer, director, shareholder and/or principal of KERLING LLC d/b/a STATE STREET BAR & GRILL, and KERLING LLC d/b/a STATE STREET BAR & GRILL was in operation in Girard, Ohio on the evening in question, and was a commercial establishment that had eight (8) television sets. See Affidavit of Sherry A. Roby.

**SEVENTH**: The auditor, Sherry A. Roby, witnessed the exhibition of the UFC #81 event being viewed by fifty-eight (72)*(sic)* patrons in KERLING LLC d/b/a STATE STREET BAR & GRILL, a commercial establishment, on February 2, 2008. See Affidavit of Sherry A. Roby.

**EIGHTH**: Since the Defendants herein did not purchase the licensing rights to the February 2, 2008 UFC#81 event it *per se* indicates that wilful and intentional acts were taken to intercept the program, thereby purposefully defrauding the Plaintiff of money. See Plaintiff's Affidavit.

**NINTH**: In do doing, the Defendants' display of the Event likely led to an increased number of patrons, and thus to an increase in profits.

*Defendants' Opposition:*

Defendants oppose these proffered facts in part through the affidavit of Mr. Easterling. (ECF # 27). Mr. Easterling states in his affidavit that he is one of the owners of State Street Bar &Grill and is the primary manager. He admits to purchasing UFC # 81 from Direct TV as a pay-per-view event and that the event was displayed at his neighborhood bar and restaurant.  He explains that Satellites Today, Inc. installed satellite television service to 7 televisions sets in the bar and 1 in an upstairs apartment in September 2007.  Its  bill for installation in the amount of $300.00, dated

5

September 7, 2007, indicates Mr. Easterling is the "customer" at the address of the State Street Bar & Grill for "8 TV's" "7 in bar and 1in upstairs apt." (Exhibit 2). This billing statement bears a signature (which Mr. Easterling admits is his) under the agreement that the "customer" understands that he has a Direct TV satellite system from Satellites Today and agrees to purchase a minimum of "CHOICE 140" package programming for 24 months or pay a penalty of $475.00 if in default. At the time of satellite installation service Mr. Easterling had all utility bills sent to his home address. He includes as Exhibit 6, a bill from Direct TV for satellite service dated January 27, 2008 showing that the subject account was his home address. However, in the return portion of the billing statement is shown the address of the State Street Bar & Grill. Mr. Easterling states that he never represented the satellite service at the restaurant to be residential, that he never signed or received any customer service agreement from Direct TV or any other entity regarding satellite service at the restaurant, and that he spoke several times with the satellite service installer, Satellites Today about the billing discrepancy, but it was never corrected.

*Joe Hand Productions, Inc.'s Legal Claims:*

Joe Hand Promotions, Inc. seeks damages for willful violations of both 47 U.S.C. §§553 and 605 for Mr. Easterling's interception and divulgence of UFC # 81 at the State Street Bar & Grill. Mr. Easterling admits to receiving the event *via* satellite transmission and displaying it at his bar consistent with a violation under §605(a).

> The first sentence of § 605(a) prohibits persons "receiving, assisting in receiving, transmitting, or assisting in transmitting ... any interstate or foreign communication by wire or radio" from divulging or publishing the contents of that communication except in specified, authorized ways. The second sentence prohibits any "person not being authorized by the sender" from "intercept[ing] any radio communication and divulg[ing] ... [its] contents ... to any person." The third sentence prohibits any

6

"person not being entitled thereto [from] receiv[ing] or assist[ing] in receiving any interstate or foreign communication by radio and us[ing] such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

*International Cablevision, Inc. v. Sykes,* 75 F.3d 123, 129 -130 (2nd Cir. 1996)

This statute prohibits unauthorized interception of satellite communications. See *U.S. v. One Macom Video Cipher II, SNA6J050073*, 985 F.2d 258, 260 (6th Cir. 1993); *PPV Connection, Inc., v. Rodriguez*, 607 F. Supp. 2d 301, 305 (D.P.R. 2009).

Section 553 is another matter. Section 553(a)(1) reads, "No person shall intercept or receive or assist in intercepting or receiving any communication service offered over a cable system . . ." Whether Mr. Easterling intercepted and exhibited UFC #81 through a "blackbox" or illegal cable drop as alleged in Joe Hand Promotions, Inc.'s affidavit ( Aff. of Joe Hand, Jr. p. 3, ECF # 25-2) is a disputed matter. However, there is no factual dispute over satellite interception. So, for purposes of summary judgment there is no genuine issue of material fact concerning the implication of 47 U.S.C. §605 to the circumstances in this matter.

*Standing:*

Section 605(e)(3)(A) allows "[a]ny person aggrieved" by a violation of §605(a) to bring a civil action. As defined in §605(d)(6), this "include[s] any person with proprietary rights in the intercepted communication. . . including wholesale or retail distributors of satellite cable programming."  Joe Hand Promotions, Inc. avers in its affidavit that it purchased the territorial rights to distribute to commercial establishment the UFC # 81 program and marketed the sub-leasing

7

of the broadcast for a fee. Joe Hand Promotions, Inc. has standing to pursue its case under §605(a). See *National Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 912 -913 (6th Cir. 2001)("By adding satellite communications under the protection of §605, along with wire and radio communications, Congress sought to make clear that those with 'proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming,' 47 U.S.C. § 605(d)(6), have standing to sue.").

*Strict Liability for Non-willful Violation:*

There are no *mens rea* or *scienter* elements for a non-willful violation of 47 U.S.C. §605(a), or its counterpart governing unauthorized interception of cable service under 47 U.S.C. §553(a). See 47 U.S.C. §605(e)(3)(C)(i)(II) and §553(c)(3)(A)(ii); *King vison Pay Per View Ltd. v. Williams,* 1 F. Supp. 2d 1431, 1484 (S.D. Ga. 1998); *Top Rank v. Guiterrez*, 236 F. Supp. 2d 637, 648-49 (W.D.Tex. 2001); *Don King Productions, Inc. v. Panaderia Y Resposteria La Milagrosa*, 553 F. Supp. 2d 97, 99-100 (D.P.R. 2008). These are strict liability offenses with no good faith defense. See *Int'l Cablevision v. Sykes*, 997 F.2d 998, 1004 (2nd Cir. 1993). Intent is immaterial to liability, but "intent is relevant to the calculation of plaintiff's remedies" with regard to the augmented amounts for liquidated damages for willful violations. *Ibid.*, and *Joe Hand Promotions, Inc. v. Williams,* 2009 WL 348294, at * 2 (W.D. Ky. 2009). Both statutes impose liability even when "the violator was not aware and had no reason to believe that his acts constituted a violation" and require liquidated damages under §553(c)(3)(C) and §605(e)(3)(C)(iii) in the amounts of $100 or $250, respectively.

8

Mr. Easterling has no defense against his unauthorized interception of UFC #81 for commercial purposes. Granted he did purchase the right to this event as a residential customer of DirecTV. However, he did not purchase the right to display the event at his commercial establishment. See *National Satellite Sports, Inc. v. Eliadis, Inc.,*253 F.3d at 916 [1]; and compare 47 U.S.C. §605(d)(4) &(5)(defining "private viewing" in one's home and excluding individual financial gain from private use). There was a violation of 47 U.S.C. §605(a) on February 2, 2008 when UFC # 81 was divulged at the State Street Bar & Grill.

Moreover, Mr. Easterling had reason to believe that he was violating §605(a). Joe Hand Promotions, Inc. argues that records subpoenaed from DirecTV establish that there was only a residential account for Mr. Easterling and that the evidence demonstrates that Mr Easterling ordered UFC # 81 for intentional exhibition at the commercial establishment at the residential rate of $44.95. Mr. Easterling's affidavit establishes that  he knew that his account was billed at residential rates

---

[1]  Quoting from a district court opinion, the Sixth circuit explained:

 This conclusion finds support from the case of *That's Entertainment, Inc. v. J.P.T., Inc.*, 843 F.Supp. 995 (D.Md.1993). That court, faced with a similar fact pattern to the one in *Cablevision*, held that

[e]ven assuming, as these defendants contend, that there was no "interception" here because [the bar] was "authorized" by [the residential distributor] to receive the Event on a pay-per-view basis, defendants still have violated the Act because they clearly were not authorized to then broadcast the Event to the patrons of a commercial establishment such as [the bar].... [T]he first and third sentences of [§ 605(a)] do not ... require an "interception" of a cable transmission and clearly proscribe the unauthorized divulgence or use of communications which have been "received" legally for certain purposes.
*Id.* at 999.
*National Satellite Sports, Inc. v. Eliadis, Inc.,*253 F.3d at 916.

for the bar as he states that he had attempted unsuccessfully to correct this discrepancy. He was aware of the violation. The bar as a commercial establishment was not authorized to divulge UFC # 81 to its patrons, and Mr. Easterling was admittedly aware of this fact, yet had ordered to display this event as a residential customer of DirecTV. Liability can be imposed on Mr. Easterling and the other defendants, consistent with constitutional limitations, due to his direct involvement as owner-operator. See *Joe Hand Promotions, Inc. v. 143-08 94th Corp.*, 2008 WL 3243886, at *3 (E.D.N.Y.) Under the statutory liquidated damage provisions which Joe Hand Promotions, Inc. has elected to pursue, §605(e)(C)(i)(II) permits recovery for this violation of an amount of not less than $1,000.00 nor more than $10,000.00.

*Willful Violation:*

Under a companion provision §605(e)(C)(ii) when "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation. . . ." Mr. Easterling argues that there is no evidence that he misrepresented the character of the commercial establishment, and the only document produced signed by him is the bill from Satellites Today. However, his reliance on the Sixth Circuit's decision in *National Satellite Sports, Inc.* is misplaced. The decision noted that the owners of Melody Lane Lounge had "reached a prompt settlement" leaving Time Warner, Inc. and National Satellite Sports, Inc. to battle over whether Time Warner had divulged the telecast of the event to an unauthorized addressee in violation of §605. See *National Satellite Sports, Inc.*, 253 F.3d at 904. The case does not exculpate Mr. Easterling from liability, which he admits.

10

Joe Hand Promotions, Inc. attempts to establish willful violation arguing that it would have cost Mr. Easterling $975.00 under the rate card for this event based on fire code seating capacity of the State Street Bar & Grill. This argument is based on an appropriate guide for the measure of damages. See *National Satellite Sports, Inc. v. Carrabia,* 2003 WL 24843407, at *3 (N.D.Ohio); *Joe Hand Promotions, Inc. v. Willis*, 2009 WL 369511, at *2 (N.D. Ohio). However, Joe Hand Promotions, Inc. has not demonstrated that Mr. Easterling's unauthorized exploitation of the residential rate leads inevitably to the conclusion that the violation was willful.

The statute does not define what is meant by a willful violation. Judge Carr has considered several differing but similar interpretations of Congressional intent for this wording.[2] Mr. Easterling's affidavit establishes that the did not act in total disregard of the governing statute and had attempted unsuccessfully to correct the billing discrepancy. Joe Hand Promotions, Inc. has not

---

[2] "The Supreme Court has defined "willful" in the context of civil statutes as conduct showing "disregard for the governing statute and an indifference to its requirements." *Transworld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985).

For purposes of § 605, courts have identified conduct as "willful" where there were repeated violations over time, or there was a sophisticated understanding of the satellite programming industry and there was a violation of the statutes that regulate the conduct. *Cable/Home Communication Corp. v. Network Prod.*, 902 F.2d 829, 851 (11th Cir.1990); *Home Box Office v. Champs of New Haven, Inc.*, 837 F.Supp. 480, 484 (D.Conn.1993).

Other district courts have ruled that a court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. *Time Warner Cable of New York City*, 977 F.Supp. at 589; *Fallaci v. The New Gazette Literary Corp.*, 568 F.Supp. 1172, 1173 (S.D.N.Y.1983).

One district court has interpreted 47 U.S.C. § 605(e)(3)(C)(ii) to include substantial unlawful monetary gains by a defendant as an appropriate factor to consider when exercising discretion in increasing the amount of statutory damages. *Home Box Office*, 837 F.Supp. at 484.

Another district court has required that there must be egregious circumstances before awarding maximum statutory damages. *Joe Hand Promotions v. Burg's Lounge*, 955 F.Supp. 42, 44 (E.D.Pa.1997)."

*Buckeye Cablevision, Inc. v. Sledge* 2004 WL 952875, 2 (N.D.Ohio).

demonstrated repeated violations or egregious circumstances. Joe Hand Promotions, Inc. has not established a willful violation.

"The Court [further] notes the provision provides that not only must the infringement be willful but it must be for purposes of direct or indirect commercial advantage or private financial gain." *National Satellite Sports, Inc. v. Carrabia,* 2003 WL 24843407, at *4 (N.D.Ohio). "[E]vidence of willful exhibition for financial gain [is] insufficient when there was no showing that a cover was charged, that the program was advertised or that food or drink prices were increased, and that establishments were not filled to capacity." *Id.* (citing *Kingvision Pay-Per-View Ltd. v. Arias*, 2000 WL 20973 (N.D.Cal. Jan.7, 2000); *Don King Productions/Kingvision v. Carrera*, 1997 WL 362115, at *2 (N.D.Cal. June 24, 1997)). Its affidavit from its event auditor states that the bar has an "estimated capacity" of 120 persons (not the fire code capacity as argued) and that while she was there she did several head counts: 60 people at first; followed by 72 at the second head count; and 70 at the third head count between 10:20 p.m. and 11:00 p.m. (UFC Piracy Aff., ECF # 25-2). The affidavit further states that there was no cover charge. The affidavit's allegations show further that the bar was only half full. Joe Hand Promotions, Inc. proffers no statement that the event was advertised by the bar or that prices were increased. Accordingly, Joe Hand Promotions, Inc. has not sustained its claim for damages under §605(e)(3)(C)(ii).

***CONCLUSION***

12

For the foregoing reasons, Joe Hand Promotions, Inc.'s motion for partial summary judgment is granted in part, and denied in part. There are no genuine issues of material fact leading to an award of damages pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II) for non-willful violation of §605(a). However, there are genuine issues of material fact on matters underlying awards of damages under 47 U.S.C. §553(c)(3) for violation of §553(a) for interception or reception over a cable system, and for damages under §605(e)(3)(C)(ii) for a violation of §605(a) committed "willfully and for purposes of direct of indirect commercial advantage or private financial gain."



                                                               s/James S. Gallas  
                                                     United States Magistrate Judge

Dated: June 22, 2009