UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOE HAND PROMOTIONS, INC.,        )        Case No. 4:08 CV 1259
                                  )
            Plaintiff,            )        MEMORANDUM OPINION
                                  )          (Resolving ECF #35)
    vs.                           )
                                  )
MICHAEL JOSEPH EASTERLING, et al.,  )
                                  )
            Defendants.           )        Magistrate Judge James S. Gallas
                                  )

Previously, plaintiff Joe Hand Promotions, Inc., moved for interlocutory summary judgment pursuant to Fed. R. Civ. P. 56(d)(2) solely on the issue of liability for violation of the Federal Communication Act. There was no dispute that on February 2, 2008, Joe Hand Promotions held the license to exclusive distribution rights to the exhibition of Ultimate Fighting Championship #81, a televised program that was distributed by satellite through DirecTV to residential subscribers for a fee, but not to commercial subscribers. Commercial subscribers were required to obtain satellite signal descrambling sub-licensure directly from Joe Hand Promotions. Defendant Michael Easterling subscribed to the telecast and exhibited the program at a commercial establishment, the State Street Bar and Grill, through a DirecTV account which was billed at a residential rate of $44.95, which was much less than the commercial rate which Joe Hand Promotions calculates would have been around $975.00.

After reviewing the record on summary judgment the Court concluded:

Joe Hand Promotions, Inc.'s motion for partial summary judgment is granted in part, and denied in part. There are no genuine issues of material fact leading to an award of damages pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II) for non-willful violation of §605(a). However, there are genuine issues of material fact on matters underlying

2

awards of damages under 47 U.S.C. §553(c)(3) for violation of §553(a) for
interception or reception over a cable system, and for damages under
§605(e)(3)(C)(ii) for a violation of §605(a) committed "willfully and for purposes
of direct of indirect commercial advantage or private financial gain."

*Joe Hand Promotions, Inc., v. Easterling*, 2009 WL 1767579, at *6 (N.D. Ohio).

Thereafter, Joe Hand Promotions stipulated with defendants to withdraw Count III of the

complaint to delete the cause of action under 47 U.S.C. §553, and defendants agreed to withdraw

their jury demand. All parties agreed that the remaining issues surrounding damages under 47 U.S.C.

§605 (e)(3)(C)(i)(II) and (ii) would be decided on submission with Joe Hand Promotions to submit

its arguments pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II) for non-willful violation of §605(a) and

pursuant to 47 U.S.C. §605(e)(3)(C)(ii) for willful violation of §605(a) on or followed by defendants

response, and Joe hand Promotions reply. (ECF # 34).

*No Award of Enhanced Damages:*

Joe Hand Promotions has vigorously presented its arguments for both statutory damages due

to non-willful violation and for enhanced damages for willful violation.  The Court found that Joe

Hand Promotions had not established willful violation under the meters supplied by *Buckeye*

*Cablevision, Inc v. Sledge*, 2004 WL 952875 (N.D. Ohio) and *National Satellite Sports, Inc. v.*

*Carrabia*, 2003 WL 2483407 (N.D. Ohio). See *Joe Hand Promotions, Inc. v. Easterling,* 2009 WL

1767579, at *5- 6 (N.D. Ohio).  The Court stands by this ruling for two reasons: first, Mr.

Easterling's exploitation of the residential rates billed by DirecTV was not in disregard of the

3

statute; and second, Joe Hand Promotions has not shown that the license violation was for direct or indirect commercial advantage or private financial gain. [1]

Joe Hand Promotions now contends that willful violation has been established because Mr. Easterling acted in disregard of the statute when he was aware of the process for lawfully ordering the program for the commercial establishment.  There is absolutely nothing in evidence that supports Joe Hand Promotions' first assertion. The irrefuted facts show that the satellite receiving system installation notes by the installer/retailer dealer for DirecTV indicated that the location was a commercial establishment. Further,  Mr. Easterling had notified DirecTV that the billing address on his statements was different from the viewing address, and  that at least by January 2008 the bill from DirecTV indicated that the account was for "Easterling, Mike" at 718 N. State St., Girard, Ohio, the address of the State Street Bar and Grill (Defendants Ex.No. 6, ECF # 27). Joe Hand Promotions  cites to records from DirecTV indicating "N" following "Business Name," but all indications in the facts provided are that this erroneous data was supplied by the installer/retail dealer for DirecTV. It is irrefuted that Mr. Easterling never signed any agreement other than the

---

[1]  There is a distinct split of authority on what constitutes a "willful" violation:

The criteria necessary to enhance an award based on the willful rebroadcast for commercial gain is unclear. Some courts require evidence of a cover charge, increase in food price during the broadcast, and/or advertisement of the broadcast in order to demonstrate willfulness and commercial gain. See, e.g., *Kingvision Pay-Per-View, Ltd. v. Arias*, 2000 WL 20973, at *2 (N.D.Cal. Jan.7, 2000) (citation omitted); *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1199 (N.D.Cal.2000). Others have found that pirating alone demonstrates willfulness, and that if the broadcast occurs at a bar or restaurant for purposes of entertainment, this is sufficient to establish commercial gain. See, e.g., *Joe Hand Promotions, Inc. v. Cat's Bar, Inc.*, 2009 WL 700125 [(C.D. Ill)].

*J & J Sports Productions, Inc. v. Betancourt,* 2009 WL 3416431, 4 (S.D.Cal.).

This Court had determined that the better view is the first view which gives due consideration to the language of 47 U.S. C. 605(e)(3)(C)(ii) that the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."

4

installation agreement, for service at "718 N. State St., Girard, Ohio." (Defendant's Ex. No. 2, ECF # 27). The evidence established that Mr. Easterling had corrected the billing address error on the DirecTV statement to reflect that the service address was different from his home address. There is no evidence that Mr. Easterling attempted to conceal that the satellite service was for a commercial establishment.

Next, Joe Hand Promotions claims that Mr. Easterling was warned in customer service agreement documents furnished by DirecTV that commercial use of the account was prohibited. However, Mr. Easterling denies that he received any customer service agreement from DirecTV. Joe Hand Promotions provides no evidence of Mr. Easterling's receipt of the customer service agreement warning. It does provide an unattested copy of a DirecTV customer service agreement in effect since April 2007 (Plaintiff's Ex. A, ECF #25-4). Also, the affidavit from Mr. Mader of DirecTV does state that the customer agreement prohibits public display of DirecTV programming (although affiant does not authenticate the customer service agreement provided by Joe Hand Promotions), but affiant does not attest that a copy of the customer agreement was provided to Mr. Easterling (Affidavit of Kent Mader, ECF # 25-2). Simply stated, Joe Hand Promotions has not demonstrated that Mr. Easterling was aware that he was being undercharged at residential billing rates, rather than commercial rates, or that he attempted to evade or conceal the commercial nature of the viewing location. Joe Hand Promotions has no facts to accuse Mr. Easterling of a willful violation.

5

Joe Hand Promotions' second assertion is that the admission that the program was displayed at the State Street Bar and Grill, establishes willfulness. This argument conflates liability due to non-willful violation with willful violation.

Joe Hand Promotions' third argument raises the matter previously omitted in its motion for interlocutory summary judgment, that is, direct or indirect commercial advantage. Joe Hand Promotions now argues that the program attracted patrons and encouraged them to stay so that they consumed more food and beverage than they otherwise would have. Again, there is nothing in evidence that patrons were attracted to State Street Bar and Grill because there is no evidence of advertising. Joe Hand Promotions produced as evidence three headcounts taken while the program was being shown in the bar. This evidence showed that the bar was about half full with 60 to 72 patrons counted during the program, but there is no evidence that this amount of activity was unusually large, that the bar patrons extended their stay to view the program (a headcount alone is not indication of patron turnover), or as noted in the prior ruling, that the prices had been increased during the program. Joe Hand Promotions' arguments are merely speculative. There is no evidence to support an award of enhanced damages due to willful violation.

*Factors for the Calculation of Statutory Damages:*

Mr. Easterling concedes that he displayed the program without the required sublicense from Joe Hand Promotions. As discussed in the ruling on interlocutory summary judgment, there is strict liability for non-willful violation. See *Joe Hand Promotions, Inc. v. Easterling,* 2009 WL 1767579, at *5.  Joe Hand Promotions correctly points out that it has the option of pursuing either actual

6

damages or statutory damages for non-willful violation, and it has elected to seek statutory damages under 47 U.S.C. §605(e)(3)(C)(i)(II). However, case law does not set out any clear and firm rules on the amount of damages within this subsection's statutory damage range of "a sum from not less than $1,000.00 or more than $10,000.00, as the court considers just."  Joe Hand Promotions argues for the maximum amount citing as factors: Joe Hand Promotions has suffered significant loss in licensing fee due to piracy; it has expended significant time and money in policing its signals to protect its interests; a minimal award of damages would signal that the costs of infringement are a small price to pay when compared to never paying the licensing fee for Joe Hand Promotions' televised programs; and, defendants enjoyed a commercial advantage over competing bars because it charged no cover fee whereas licensed competitors would need to charge a cover fee to recoup their licensing costs.

None of the case law cited by Joe Hand Promotions to augment statutory damages due to losses incurred due to piracy, or to recoup its policing effort expenses support for this argument, nor has the Court uncovered support. While plaintiff had arranged for policing efforts, there is no evidence that it had educated or conveyed the necessary information to proprietors of commercial establishments of the correct means to obtain the proper sublicense. Also the evidence fails to show that customer service agreement with its warning from the DirecTV  was conveyed to Mr. Easterling.  The facts show that Mr. Easterling was left in the dark and did not discover that display of the  February 2, 2008 telecast was illegal, until he was later contacted by an agent of Joe Hand Promotions.  This is  litigation by ambush. Further, the commercial advantage argument repeated

7

by Joe hand Promotions, but this argument was negated previously under discussion enhanced damages.

Mr. Easterling argues that the Court limit statutory damages to the amount of $1,000.00. Under the circumstances with no evidence of prior violation or actual knowledge on Mr. Easterling's part of the license violation, the Court awards Joe Hand Promotions judgment in the amount of $1,000.00 in this matter.

*Joint & Several Liability:*

Joe Hand Promotions demands damages separately against defendants Michael Easterling and the corporate entity, Kerling L.L. C., so as to compound the award by each defendant. No legal support is offered for this position. The undisputed facts established that Michael Easterling had the right and ability to supervise the violation and a direct financial interest as the bar's owner through a corporate entity, creating personal liability. See *Innovative Sports Marketing, Inc., v. Aquarius Fuente De Soda, Inc.,*2009 WL 3173968, at *10 (E.D. N. Y. Sep. 30, 2009)*;* Compare *J & J Sports Prods., Inc. v. 291 Bar & Lounge, Inc.*, - F. Supp. 2d -, 2009 WL 2566954, at *2 (E.D. N.Y. 2009)(Complaint failed to allege authorization for the violation by the individual defendant). The Court further finds that under the circumstances the corporate entity used in the principal's business and the principal are subject to joint and several liability. See *Joe Hand Promotions, Inc. v. Harmon*, 2009 WL 2591759, 3 (S.D. Ohio Aug. 20, 2009); *Entm't by J & J Inc. v. Medina*, 2002 WL 273306, at *3 (S.D.N.Y. Feb.26, 2002) (citing cases); accord *Kingvision Pay-Per-View Ltd. v. Olivares*, 2004 WL 744226, at *5 (S.D.N.Y. April 5, 2004). However, there is only one finite sum for statutory

8

damages due to non-willful violation, and not separate awards against the corporation and its principal officer individually.


*Award of Attorneys' Fees and Costs:*

The Federal Communication Act includes recovery of reasonable attorneys' fees and full costs to an aggrieved party who prevails. See 47 U.S.C. §605(e)(3)(B)(iii). Joe Hand Promotions has submitted its counsel's affidavit to support a demand of $3,476.25 for counsel's fees at the rate of $200.00 per hour, and for costs including th $350.00 filing fee and $200.00 for service of process. The fee request includes $630.00 listed as "Paid Local Fees" without substantiation. Joe Hand Promotions' demand  has divided this request between Michael Easterling and the corporate entity, defendant Kerling L.L.C., as  $1,738.13 and $1,738.12 respectively. [2]  The total of these amounts is $3,476.25. The amount of the costs has been omitted.  This division of the demand has led to some confusion.  Defendants do not understand that it was Joe Hand Promotions's intent to divide the amount of attorneys' fees between the two  defendants, so defendants mistakenly  agree to the demand of $1,738.12, as the total amount being sought by defendants.


Counsel's fees are supported by itemization for time expended by both chief counsel and for paralegal time to the extent of $2, 296.25. However, the request for an unsubstantiated amount for local counsel fees in the amount of $630.00 is denied for lack of support and as cumulative. See *National Satellite Sports, Inc. v. Eliadis, Inc*., 253 F.3d 900, 918 (6th Cir.  2001).

---

[2] Counsel's fees were divided between each entity found to be liable in *Time Warner Cable of New York City v. Googies Luncheonette, Inc.,* but it appears that each of these corporate defendants was a separate, unrelated entity. See *id*., 77 F.Supp. 2d 485, 491(S.D.N.Y. 1999).

9

***CONCLUSION***

Pursuant to the stipulated procedure for resolving the remaining issue of damages for defendants' Federal Communication Act violation, the Court awards statutory damages for non-willful violation of 47 U.S.C. §605(e)(3)(C)(i)(II)  in the amount of $1,000.00 plus attorney fees in the amount of $2,296.25 for judgment totaling $3,296.25 plus interest under 28 U.S.C. §1961 at the current rate.

<u>        s/James S. Gallas        </u>
United States Magistrate Judge